UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS L. JONES, ET AL., | Case No. 8:17-00768 CJC (ADSx) |
| Plaintiffs, | |
| v. | CERTIFICATION AND ORDER TO SHOW CAUSE RE: CONTEMPT AND SANCTIONS |
| A BUYER'S CHOICE HOME INSPECTIONS, LTD., ET AL., | |
| Defendants. | |

## I. **INTRODUCTION**

This Certification relates to the November 12, 2019 Court-ordered settlement conference before the undersigned Magistrate Judge. Because the undersigned believes Defendants did not participate in the settlement conference in good faith and failed to comply with court rules and orders, pursuant to 28 U.S.C. § 636(e), I recommend to the presiding District Judge the following issues: (a) whether Defendant William (Bill) Redfern should be held in contempt or sanctioned; (b) whether his counsel, Al Mohajerian, should be held in contempt or sanctioned; and (c) what sanctions should be

imposed, if any.

## II. SUMMARY OF MAGISTRATE JUDGE'S CONCLUSIONS

It is the opinion of the undersigned Magistrate Judge that Mr. Redfern was not forthright with the Court in his repeated representations under penalty of perjury that he was unable to attend the November 12, 2019 settlement conference in person due to his doctor's advice not to fly and that he was confined to driving in his residential area in Florida. Given that Mr. Redfern has been unable or unwilling to identify the doctor that so advised him, admitted to flying both before and after the settlement conference, and admitted to participating in a half triathlon two days prior to the settlement conference, it is also my opinion that Defendants did not participate in the settlement conference in good faith.

It is further my opinion that Mr. Mohajerian intentionally failed to obey court orders when he did not address specifically delineated issues ordered by the Court and when he failed to appear at the December 18, 2019 Order to Show Cause ("OSC") hearing, instead sending a colleague to the hearing.

## III. LEGAL STANDARD

Defendants have been ordered to show cause why they should not be held in contempt and/or sanctioned for certain conduct related to the November 12, 2019 settlement conference. Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply. The contempt need not be willful; however, a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation

of the court's order." Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1130 (9th Cir. 2006) (internal citations and quotations omitted).

28 U.S.C. § 636(e) sets forth the power of a magistrate judge to exercise contempt authority. Where an act constitutes a civil contempt,

> [T]he magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

28 U.S.C. § 636(e)(6)(B)(iii); see Bingman v. Ward, 100 F.3d 653, 656–58 (9th Cir. 1996) (describing magistrate judge's authority regarding contempt proceedings), cert. denied, 520 U.S. 1188 (1997); United States v. Brumbaugh, No. 09-5012, 2010 WL 724677 at *2, 2020 U.S. Dist LEXIS 24951 at *4–5 (W.D. Wash. Feb. 26, 2010) ("In certifying the facts under Section 636(e), the magistrate judge's role is 'to determine whether the moving party can adduce sufficient evidence to establish a prima facie case of contempt.'") (quoting Church v. Steller, 35 F. Supp. 2d 215 (N.D.N.Y. 1999)).

Federal courts have an inherent power to impose appropriate sanctions where conduct disrupts the judicial process. Chambers v. NASCO, Inc., 501 U.S. 32, 45–46 (1991). A court may assess attorney fees as a sanction for willful disobedience of a court order or when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. Id. Further, a party who violates the Federal Rules of Civil Procedure or Local Rules may be subject to monetary sanctions and/or the imposition of costs and attorneys' fees to opposing counsel. See Fed. R. Civ. P. 11(c) ("[A] sanction may include . . . an order directing payment to the movant or part or all of the reasonable attorney's

fees and other expenses directly resulting from the violation."); L.R. 83-7 ("The violation of or failure to conform to any [] Local Rules may subject the offending party or counsel to . . . monetary sanctions, . . . [and/or] the imposition of costs and attorneys' fees to opposing counsel . . . .").

Further, as to penalty of perjury, "[w]hoever under oath (or in any declaration, . . .) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration . . . shall be fined under [Title 18] or imprisoned not more than five years, or both." 18 U.S.C. § 1623(a).

## IV. <u>CERTIFICATION OF FACTS</u>

In accordance with 28 U.S.C. § 636(e), undersigned Magistrate Judge Autumn D. Spaeth hereby certifies the following facts, which are based on the Magistrate Judge's personal knowledge, representations of the parties and their counsel, and testimony given before the undersigned Magistrate Judge at the OSC hearing held on December 18, 2019:

<u>**SETTLEMENT CONFERENCE**</u>

### A. <u>Settlement Conference Order</u>

1. On October 1, 2019, District Judge Cormac J. Carney issued an order denying both parties' motions for summary judgment and directing "the parties to appear before Magistrate Judge Spaeth within FORTY-FIVE DAYS from the date of this order for settlement proceedings." [Dkt. No. 59, p. 13]. Of particular import for these proceedings, in that order, Judge Carney stated,

> The Court is disappointed with the parties' failure to follow the Federal Rules of Civil Procedure in these motions, especially since this is not the first time the parties have failed to follow such rules. (<u>See</u> Dkt. 42 [ordering plaintiff's counsel to show cause why this action should not be dismissed for failure to follow Court orders, this Court's Local Rules, and the Federal

Rules of Civil Procedure]; Dkt. 27 [entering default against entity defendants after they failed to obtain counsel despite the Court's advisement that Local Rule 83-2.2.2 precludes entity defendants from appearing pro se].). The parties are advised that failure to comply with trial rules and procedures will not be tolerated and may result in sanctions including dismissal.

[Id., p. 12: 15–23]. Judge Carney further informed all parties, "The Court will only proceed to schedule a pretrial conference and trial date once it is convinced that the parties have made a good faith effort to resolve this business dispute." [Id., p. 13: 5–7].

### B. When Defendant Bill Redfern Applied to Appear at the Settlement Conference Telephonically, He Misrepresented to the Court His Reasons To Do So

2. On October 8, 2019, Mr. Mohajerian emailed the Magistrate Judge's chambers, stating, "We seek relief from the magistrate judge for my client's attendance at the mediation by way of telephone. . . . The client resides in the State of Florida and is unable to attend the mediation in person." [Dkt. No. 65, Attachment 2, p. 2].

3. On or about October 9, 2019, Judge Spaeth's Courtroom Deputy advised Mr. Mohajerian that personal appearances were required for the settlement conference. [Id., p. 3].

4. On October 24, 2019, Defendants filed an Ex Parte Application for Order Granting William Redfern on Behalf of Defendants to Appear at the Mediation by Telephone ("Application"). [Dkt. No. 65]. The Application explains that Mr. Redfern not only resides out of state, but also cannot fly due to medical advice regarding a health condition. The Application states, in part,

> Defendant William Redfern lives in Florida and he has a serious medical condition, pulmonary edema, i.e., blood in his lung. Defendant's physician has advised him not to fly because it may cause a pulmonary embolism, which is a serious life-threatening condition. Defendant Redfern is confined to driving within driving distance of his residence in Florida.

5

[Id., p. 3].

5. In a declaration accompanying the Application, Defendant Mr. Redfern declared under penalty of perjury,

> I am unable to attend the mediation in person per Court's order. I reside in Florida. I have a pulmonary edema condition which means I have blood in my lungs. My doctor has advised me that I should not fly because of the possibility of an embolism. I have been confined to driving within the vicinity of my residence. I am scheduled to be admitted to the hospital in December 2019.

[Id., Attachment 3, p. 2].

6. In a declaration accompanying the Application, Defendants' counsel, Mr. Mohajerian, declared under penalty of perjury,

> Defendants have confirmed that Defendant William Redfern is unable to personally attend the mediation because he has a medical condition, i.e., blood in the lungs, and his physician has advised him not to fly because it may cause a pulmonary embolism which is life-threatening. Mr. Redfern is only allowed to drive within driving distance of his residence in Florida and it is anticipated that he will be entering a hospital in December.

[Id., Attachment 2, p. 3].

7. On October 25, 2019, the undersigned Magistrate Judge issued an Order Re: Settlement Conference. [Dkt. No. 66]. The order states, in part,

> [A] person with full settlement authority on behalf of the party must be present for the Settlement Conference. This requirement contemplates the physical presence of your client or, if a corporate or government entity, of an authorized and knowledgeable representative of your client. Even if your client is located outside the Central District of California, the client's representative with full settlement authority will be expected to appear in person.

[Id., p. 5].

8. On October 25, 2019, during a pre-settlement telephone conference call, based upon the representations in the Application and after confirming that

Mr. Mohajerian would have full settlement authority, the Magistrate Judge granted Defendants' Application.  [Dkt. No. 67].

9. On November 10, 2019, two days before the settlement conference, Mr. Redfern participated in the Miami Man Half Triathlon.  [Dkt. No. 68, Attachments A, B, and C].[1]

10. On November 12, 2019, the Magistrate Judge held a settlement conference.  [Dkt. No. 69].  Plaintiffs, their counsel, and Defendants' counsel, Mr. Mohajerian, were in attendance.  Defendant Mr. Redfern made a brief appearance telephonically at the beginning of the settlement conference.  The Magistrate Judge separately conferred with Plaintiffs and their counsel, and then with Defendants' counsel.  The Magistrate Judge terminated the settlement conference after it became clear that settlement efforts would not be fruitful because Defendants' counsel had only limited monetary settlement authority.

## **ORDER TO SHOW CAUSE RE: CONTEMPT AND SANCTIONS**

### A. **Order and Responses**

11. On November 15, 2019, the Magistrate Judge issued an Order to Show Cause Re: Contempt of Court and Sanctions ("OSC").  [Dkt. No. 68].  The OSC states, in part,

> Defendant is ordered to show cause why defendant and defendant's counsel should not be held in contempt of court and sanctioned for perpetrating a fraud on the Court; perjury; failing to comply with Court orders, Local Rules, Federal Rule of Civil Procedure 11, and counsel's duty of candor to the court; and needlessly increasing the cost of litigation and burden on the court.

---

[1] At the December 18, 2019 hearing on the OSC, Mr. Redfern admitted that he participated in the Miami Man Half Triathlon and admitted the authenticity of the OSC Attachments.

[Id., p. 2]. The OSC ordered defendant and his counsel to explain and/or provide to the Court the following:

1. Admit or deny defendant William Redfern participated in the 2019 Miami Man Half Triathlon on November 10, 2019.
2. Evidence to support <u>each and every</u> statement in defendant's declaration [Dkt No. 65-3] on page 2, lines 1–5.
3. Evidence to support <u>each and every</u> statement in defendant's counsel's declaration [Dkt. No. 65-2] on page 1, lines 25–26, and page 3, lines 8–12.
4. Admit or deny the authenticity of the Instagram post one week prior to the settlement conference reflecting defendant's preparation for the 2019 Miami Man National Championship, attached as "Attachment A" [to the OSC].
5. Admit or deny the authenticity of the 2019 Miami Man Half Triathlon results for Bill Redfern, attached as "Attachment B" [to the OSC].
6. Admit or deny the authenticity of the 2019 Miami Man Half Triathlon photos of Bill Redfern, one of which is attached as "Attachment C" [to the OSC].

[Id., p. 3]. Plaintiffs were also permitted to submit a brief regarding the relevant issues including appropriate sanctions. [Id.]. Further, the OSC was set for hearing on December 18, 2019 at 10:00 a.m. at the Ronald Reagan Federal Building and U.S. Courthouse in Santa Ana, California. [Id.]. The OSC further required the personal appearance of Mr. Redfern and his counsel. [Id.].

    12.    On November 22, 2019, Mr. Redfern filed a declaration in response to the OSC. [Dkt. No. 73]. Mr. Redfern declared, in part, as follows:

> 4. My doctor has advised me that I should not fly because of the possibility of an embolism occurring while in flight, where access to medical life-saving measures is unavailable. My doctor has advised that a sudden increase in elevation will exacerbate my condition and result in a greatly increased risk of the edema (liquid) increasing and thus an increased risk of severe medical problems and/or fatality.

> 5. After significant cardio pulmonary testing confirming the above diagnosis I was cleared in time to begin exercise although cautioned about flying among other things, for a six to nine month timeframe due to the risk of deep vein thrombosis. . . .
>
> 9. I have been advised that exercise, including triathlons within reason, is fine and in fact encouraged.

[Id., p. 2]. With his declaration, Mr. Redfern attached as an exhibit a "medical information sheet" describing the risk of developing deep vein thrombosis as a result of a pulmonary embolism. [Id., p. 5]. Mr. Redfern and the exhibit provide no source for the medical information sheet.

    13.    In addition, in response to the OSC, Mr. Mohajerian declared, "Clearly based on [Mr. Redfern's] declaration, his medical condition is relevant to his inability to fly. Apparently, Mr. Redfern was diagnosed with pulmonary edema. With this condition, a pulmonary embolism is an increased danger." [Dkt. No. 73, Attachment 1, p. 2]. Mr. Mohajerian attached as an exhibit a printout titled, "Pulmonary Disease and Air Travel," from the website www.tripprep.com.

    14.    Defendants' responses to the OSC did not directly address and respond to all of the issues requiring a response that were set forth in the OSC.

    15.    On December 4, 2019, the Court ordered Mr. Redfern to file a declaration, written statement, or letter from his physician to support the representations made in Mr. Redfern's November 22, 2019 declaration. [Dkt. No. 74].

    16.    On December 12, 2019, Mr. Redfern filed a letter from Dr. Eli Meyer Friedman, Medical Director of Sports Cardiology at Memorial Cardiac and Vascular Institute in Hollywood, Florida. [Dkt. No. 75]. The letter is dated December 11, 2019 and references an office visit on that date. [Id., p. 2]. In the letter, Dr. Friedman states, "Bill is under my care for his cardiovascular conditions. He had a medical event earlier

this year and testing is underway. I am not comfortable with him flying until testing is completed." [Id.].

17. Defendants' response to the December 4, 2019 order did not support all of the representations Mr. Redfern made to the Court.

18. On December 13, 2019, the Court ordered Mr. Redfern to produce Dr. Friedman for further questioning at the OSC hearing on December 18, 2019. [Dkt. No. 76].

19. On December 17, 2019, the day before the OSC hearing, Defendants filed Ex Parte Applications for Mr. Redfern and Dr. Friedman to appear at the hearing telephonically. [Dkt. Nos. 77, 78]. The Court granted the applications. [Dkt. Nos. 79, 80].

20. Immediately after, on December 17, 2019, Defendants filed an Ex Parte Application to Continue Order to Show Cause Hearing on Wednesday, December 18, 2019 from 10:00am to 2:00pm based upon the availability of Dr. Friedman. [Dkt. No. 81]. With the application, Defendants' counsel filed a declaration in which he stated that on December 16, 2019 he learned of the time for the OSC hearing and that he is required to appear in a different matter in Los Angeles at the same time. [Id.]. The Court denied the Ex Parte Application to Continue Order to Show Cause Hearing. [Dkt. No. 82].

21. On December 18, 2019, the Court held the hearing on the OSC Re: Contempt of Court and Sanctions. [Dkt. No. 85]. Plaintiffs' counsel appeared. Mr. Mohajerian did not appear. However, Ann Anooshian, an associate of Mr. Mohajerian, appeared on behalf of Defendants. Mr. Redfern and Dr. Friedman appeared telephonically and provided testimony.

### B. Mr. Redfern's Testimony

22. During the December 18, 2019 OSC hearing, Mr. Redfern testified, in relevant part, to the following:[2]

    a. Mr. Redfern "was advised that it was probably not a great idea to – fly[] five or six hours to the coast." [Dkt. No. 86, Transcript, p. 5].

    b. Dr. Friedman was not the physician that advised Mr. Redfern not to fly, prior to the November 12, 2019 settlement conference, whom he referred to in prior declarations. See [Id., p. 14].

    c. When asked to name his physician who advised him not to fly prior to November 12, 2019, Mr. Redfern failed to provide any specific name. After repeated questioning, Mr. Redfern testified, "One was a cardio emergency room nurse that was a friend of mine." [Id.].

    d. Mr. Redfern testified that the nurse's name is Jocelyn Lummis. [Id., p. 15–16]. He further testified that Ms. Lummis is a personal friend and that she was not treating him for his pulmonary edema condition. [Id., p. 11].

    e. After Plaintiffs' counsel informed the Court that Ms. Lummis is an attorney in Florida who represents Mr. Redfern, Mr. Redfern admitted that Ms. Lummis is also an attorney in Florida who previously represented him. [Id., p. 16].

    f. When asked who gave him advice that "exercise including triathlons within reason is fine and, in fact, encouraged," [Dkt. No. 73, p. 3], Mr. Redfern testified,

---

[2] Due to technical difficulties, the beginning parts of Mr. Redfern's testimony was not captured by the electronic recording software and thus are not reflected in the transcript of the hearing on the OSC Re: Contempt of Court and Sanctions ("Transcript") [Dkt. No. 86]. All citations to the Transcript refer to the CM/ECF pagination.

11

"I'm not sure offhand, Your Honor. I talked to – any number of medical people. So, I'm sure I heard it somewhere along the line." [Dkt. No. 86, Transcript, p. 10].

        g.      When asked, "When was the last time you flew?," Mr. Redfern testified, "I did three different flights up and down the East Coast to New England between June and November before being cautioned – otherwise learning not to – and certainly no long flights over – over two hours." [Id., p. 15].

        h.      Mr. Redfern testified that he last flew in November, for Thanksgiving, to Portland, Maine. [Id., p. 18].

        i.      In 2019, Thanksgiving occurred on Thursday, November 28, 2019. The settlement conference was held November 12, 2019.

        j.      Mr. Redfern testified that he participated in the Miami Man Half Triathlon on November 10. 2019.

        k.      Mr. Redfern testified that he participated in a triathlon on December 15, 2019. See [Id., p. 22].

        l.      Mr. Redfern testified that he suffered a pulmonary edema episode on December 15, 2019. See [Id., pp. 22, 26].

        m.      When asked how he envisioned the settlement conference would proceed, Mr. Redfern testified, "This [case] has been, you know, again in my opinion nothing more than a shake-down from the beginning. And they continue to drag it out and drag it out. And it's similar to this matter that we're talking about today. And they can carry on and carry on and waste everybody's time in legal fees as long as they wish. And more power to them. That's great." [Id., p. 7].

### C. Dr. Friedman's Testimony

23. During the December 18, 2019 OSC hearing, Dr. Eli Friedman testified, in relevant part, to the following:

    a. Dr. Friedman is a sports and exercise cardiologist. [Dkt. No. 86, Transcript, p. 24].

    b. He met Mr. Redfern for the first time on December 11, 2019, one week prior. [Id., p. 22].

    c. Because Mr. Redfern was already exercising, he advised him that continuing to exercise was acceptable. [Id., p. 25].

    d. Referring to his December 11, 2019 letter, Dr. Friedman stated, "I would prefer that [Mr. Redfern] not travel just because the diagnosis wasn't a hundred percent yet." [Id., p. 26].

    e. Dr. Friedman met with Mr. Redfern again on December 16, 2019 after Mr. Redfern suffered a pulmonary edema episode on December 15, 2019. [Id., pp. 22, 26].

### D. Mr. Mohajerian's Tesimony

24. On December 17, 2019, the day before the OSC hearing, Defendants filed an Ex Parte Application to Continue Order to Show Cause Hearing on Wednesday, December 18, 2019 from 10:00am to 2:00pm based upon the availability of Dr. Friedman. [Dkt. No. 81]. With the application, Defendants' counsel filed a declaration in which he stated that on December 16, 2019 he learned of the time for the OSC hearing and that he is required to appear in a different matter in Los Angeles at the same time. [Id.]. The Court denied the Ex Parte Application for Continuance. [Dkt. No. 82].

25. Mr. Mohajerian did not appear at the OSC hearing as ordered.

26. Ms. Anooshian, a colleague of Mr. Mohajerian, appeared and represented to the Court the following:

  a. "I'm familiar with this case. And I'm familiar with the relationship we have with our client. And I'm usually CCed on most communications." [Dkt. No. 86, Transcript, p. 29].

  b. "Mr. Mohajerian was simply relaying what he was told by the client. And we had no reason to think otherwise." [Id., p. 30].

  c. Ms. Anooshian stated that she was involved in Mr. Redfern's request to appear telephonically. [Id., p. 32].

  d. Ms. Anooshian stated that she reviewed the OSC with its exhibits. [Id., p. 30].

  e. "I helped to draft the declarations and put those exhibits together. So, I could authenticate them probably. . . We have no reason to not authenticate the [OSC Attachments]." [Id.].

**E.** **Declaration of Jocelyn Lummis**

27. On January 6, 2020, Defendants filed a declaration by Jocelyn Lummis, in which she declared, in relevant part, under penalty of perjury:

  a. "I have been a personal friend of Mr. Redfern for many years." [Dkt. No. 88, p. 2].

  b. "I am licensed to practice law in the state of Florida and have represented Mr. Redfern in prior matters." [Id., p. 1].

        c.      "I am also a registered nurse in the state of Florida. In my 23 year nursing career I have been a flight RN, a trauma RN, ER nurse and currently practice in a high acuity heart surgical intensive care unit." [Id.]

        d.      On or around May 6, 2019, during a personal conversation concerning Mr. Redfern's pulmonary condition, she "advised him that he should not fly until medically cleared by a physician." [Id., p. 2].

        e.      "Since May [Mr. Redfern and I] have discussed this medical issue on a personal level on multiple occasions. . . . I mentioned to him that I was not a physician and was concerned as a friend." [Id.].

        f.      "All of the discussions with Mr. Redfern were that of two friends talking. Medical advice was never proffered, although I expressed my opinion and concerns as a registered nurse." [Id.].

## POSSIBLE SANCTIONS, ATTORNEYS' FEES AND COSTS

28.    On January 7, 2020, Plaintiffs' counsel filed a declaration, requesting sanctions for time spent related to the settlement conference and OSC Re: Contempt of Court and Sanctions, for 12.3 hours at a rate of $475 per hour, totaling $5,842.50. [Dkt. No. 90].

## V. CONCLUSIONS OF MAGISTRATE JUDGE

Based upon the events, briefs, and testimony provided by the parties, the undersigned Magistrate Judges concludes as follows:

29.    The record supports Mr. Redfern's representations that he has a pulmonary edema condition.

30.    The record does not support Mr. Redfern's repeated representations to the Court that he was not able to personally attend the November 12, 2019 court-ordered

settlement conference because he was heeding his doctor's advice not to travel and to be confined to driving near his home.

31. The record establishes that Mr. Redfern voluntarily flew both before and after the settlement conference, which contradicts his earlier representations to the Court.

32. There is no evidence that Mr. Redfern obtained advice from his doctor that he should not fly and was confined to driving near his home prior to the November 12, 2019 settlement conference.

33. Mr. Redfern's stated reason for not personally appearing at the settlement conference was, at best, only part truth—that Mr. Redfern, in the past, had a pulmonary edema episode. However, Mr. Redfern believes the lawsuit is a "waste of time" and simply did not want to personally appear for the settlement conference.

34. Defendants did not participate in the settlement conference in good faith and needlessly increased the cost of litigation and burden on the Court.

35. Mr. Redfern and his attorney's declarations and filings [Dkt. No. 73] in response to the November 15, 2019 OSC do not address any of the required six specific issues. As a result, the Court twice ordered further briefing.

36. Dr. Friedman's letter, filed by Mr. Redfern, does not directly respond to the Court's December 4, 2019 order, since Dr. Friedman was not the physician who advised Mr. Redfern not to fly prior to the November 12, 2019 settlement conference. See [Dkt. No. 86, p. 14].

37. Mr. Mohajerian and Defendants repeatedly failed to obey court orders and needlessly increased the cost of litigation and burden on the Court by filing briefs and declarations that did not directly respond to the court's orders.

16

38. Mr. Mohajerian failed to obey court orders when he did not appear at the December 18, 2019 hearing on the OSC Re: Contempt of Court and Sanctions. He received sufficient notice of the hearing date and of the order to attend when the Magistrate Judge issued the OSC on November 15, 2019 and denied Defendants' request to continue the OSC hearing on December 17, 2019.

39. Plaintiffs incurred $5,842.50 in fees and costs as a result of Defendants' and Mr. Mohajerian's actions in connection with the settlement conference and OSC. See [Dkt. Nos. 72, 90]. This amount represents Plaintiffs' counsel's 12.3 hours of time spent preparing for and attending the settlement conference and OSC hearing, at a rate of $475 per hour. [Id.].

## VI. ORDER

IT IS HEREBY ORDERED that Defendant William Redfern and Defendants' counsel, Al Mohajerian, shall appear before the Honorable Cormac J. Carney—at a time and place to be set by him in a separate Order—and then and there show cause why they should not be adjudged in contempt or sanctioned by reason of the facts certified herein.

Dated: February 18, 2020 　　　　　　　　　　/s/ Autumn D. Spaeth
　　　　　　　　　　　　　　　　　　　　　THE HONORABLE AUTUMN D. SPAETH
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

cc: Hon. Cormac J. Carney